IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**RUSHAWN SMITH**                                                                           **PLAINTIFF**

v.                                                             Case No. 3:09-cv-00668-DPJ-FKB

**KOCH FOODS OF MISSISSIPPI, LLC**                                              **DEFENDANT**

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S <u>MOTION FOR SUMMARY JUDGMENT</u>

On September 9, 2008, Rushawn Smith, a line worker at Koch Foods of Mississippi LLC, ("Koch Foods" or the "Company") engaged in a verbal altercation with a fellow line worker. The other employee reported that Smith left the production line in violation of company policy, used abusive language and threatened her. The plant's Human Resources Manager, Kay Crawford, investigated the matter and found the allegations against Smith to be credible. Given the seriousness of Smith's conduct, Crawford made the decision to terminate Smith's employment.

Smith subsequently filed this lawsuit against the Company alleging she was discriminated against on the basis of race and national origin, was sexually harassed by a supervisor, and was retaliated against for complaining about discrimination and harassment.[1] Each of these claims is based entirely on Plaintiff's self-serving subjective beliefs and uncorroborated conjecture. First, Smith's race and national origin discrimination rest on her unfounded belief that she was denied job bids in favor of less qualified Hispanic and Mexican American employees. However, the undisputed objective evidence shows that Koch Foods promoted employees with more seniority and fewer job occurrences, in accordance with procedures mandated by the employees' collective bargaining agreement. Second, Smith

---

[1] Smith initially asserted a state law claim for intentional infliction of emotional distress, which she voluntarily withdrew on the record during her deposition. Ex. A, Smith Dep. at 135.

contends that her supervisor, Larry Webster, made inappropriate comments to her on two occasions and, on one of those occasions, showed her an explicit video on his cell phone. Smith offers zero evidence, apart from her uncorroborated statements, that these events occurred. But even if true, her allegations do not come close to the level of "severe and pervasive" conduct necessary to sustain a sexual harassment claim as a matter of law. Finally, Smith claims that she was placed in the "coldest area of the plant" and eventually terminated in retaliation for complaining about discrimination and harassment. These claims fail because Smith cannot show a causal nexus between her complaints and the alleged adverse employment actions.

Therefore, and for the following reasons, the Court should grant Koch Foods' motion for summary judgment and dismiss the Complaint in its entirety with prejudice.

## STATEMENT OF FACTS

A.   **Smith's Employment with Koch Foods**

Koch Foods is a leading producer and supplier of poultry products and maintains a poultry de-boning facility in Forest, Mississippi. (Ex. B, Crawford Aff. ¶ 4). The Forest plant has several levels of management: at the top is the Plant Manager; below the Plant Manager is a Day Shift and Night Shift Manager; and below the Shift Managers are several Supervisors. (*Id.* ¶ 5).

Rushawn Smith was hired at the Forest plant on July 26, 2008, as a night shift line worker. (Ex. A, Smith Dep. at 10-13). When she started, she received an orientation on Koch Foods' policies. (Smith Dep. at 15; *see also* Ex. C). These policies included the Company's prohibitions against abusive language, threats to fellow employees, and leaving one's work station. (Ex. C). During her employment at Koch Foods, Smith worked in several departments and performed a variety of tasks on the de-boning production line including inspecting, washing, tallying, packaging, and loading the product. (Smith Dep. at 22-23, 26, 119). Her specific duties

on any given day were dictated by her Supervisor.  (Crawford Aff. ¶ 5).

**B.**     **Smith's Applications for Promotions**

Like all of the line workers at the Forest plant, Smith was a member of United Food and Commercial Workers Union, Local 1529 (the "Union"), and subject to the collective bargaining agreement between Koch Foods and the Union (the "CBA").  (*Id.* at 38; *see also* Ex. D).  The CBA governs the procedures for all promotions and job upgrades in the Forest plant.  (Ex. D § 24.08).  It requires Koch Foods to post all open positions in the employee break room for three working days.  (*Id.*).  Employees who wish to be considered for a posted position must sign up at the personnel office.  (*Id.*).  At the end of the posting period, the Company may select among the applications "in its sole discretion," taking into account seniority, absenteeism, dexterity, job performance and work record.  (*Id.*).  If an employee wishes to challenge an unsuccessful bid as a violation of the CBA, the employee may file a grievance in accordance with the CBA's procedures.  (Ex. D §§ 4.01-4.08).

In November 2007, Smith applied for a Lead Person position in the tunnel department.  (Smith Dep. at 26-28; *see also* Ex. E).  Since Smith was the only person who signed up for the position, she was awarded the assignment.  (Ex. E, Crawford Aff. ¶ 8; *see also* Ex. E).  On or about December 30, 2007, the Company closed the department and Smith was returned to her previous position as a line worker.  (Smith Dep. at 29; Crawford Aff. ¶ 9).  According to Smith, the Night Shift Manager at the time, Kathy Joe Clark, promised her that she would eventually be placed back in a lead position.  (Smith Dep. at 30).

Smith subsequently bid on two more job postings:  On January 31, 2008, Smith bid for an open position as a Lead Person in the Wing Department.  (Smith Dep. at 57-58; Crawford Aff. ¶ 10; *see also* Ex. F).  That position was awarded to Araceli Castillo, who had ten years more

seniority than Smith and no occurrences and warnings, as compared to Smith, who, at that time, had four occurrences for absences in the previous three months and one written warning. (Crawford Aff. ¶ 10; *see also* Ex. F). On May 1, 2008, Smith applied for an open position as Lead Person in the Tender Line Department. (Smith Dep. at 60-61; Crawford Aff. ¶ 11; *see also* Ex. G). That position was awarded to Gloria Hernandez, who had seven years more seniority than Smith, and only one occurrence. (Crawford Aff. ¶ 11; *see also* Ex. G). At the time of her bid for the Tender Line position, Smith had a total of seven and a half occurrences for absences pending as well as a written warning for failing to follow instructions. (Crawford Aff. ¶ 11; *see also* Ex. G). On both occasions, Smith was informed by her supervisor Joyce West that she was denied the position because she had less seniority and more occurrences and warnings than the successful bidder. (Smith Dep. at 63-66; *see also* Exs. H - I).

Smith claims she bid for a third lead position, which was given to Julio "Daniel" Rodriguez. (Smith Dep. at 78-80). Koch Foods is unaware of – and no documentation exists for - any lead position which Smith and Rodriguez bid for that was awarded to Rodriguez. (Crawford ¶ 13). And Smith herself admits that she has no personal knowledge about the credentials, seniority or occurrences of Mr. Rodriguez. (Smith Dep. at 78-80).

Smith also alleges that she applied for a position as a tally person. Similarly, there is no documentation of that application either. (Smith Dep. at 62; Crawford Aff. ¶ 14). Although she "believes" the person who was awarded the unknown tally position was less senior than her; Smith acknowledges that other than her own speculation, she knows nothing about this person. (Smith Dep. at 62, 71-73).

Ms. Smith contends that she was denied these three positions because of her race (Black) and national origin. (*Id.* at 56-70-71, 73-74). Stated differently, she claims these positions were

given to Hispanics and Mexican Americans because of their race and national origin. (*Id.*). However, she never filed a grievance challenging the denial of these positions. (Crawford Aff. ¶ 12). According to Smith, she complained orally to Plant Manager Steve Hodges, Night Shift Manager Larry Webster, her union steward, and Shift Manager Brian Hanna[2] regarding her allegations of age and race discrimination. (*Id.* at 50, 104-05; Ex. J, Plf. Interrog. Resp. No. 4). But she never complained to the plant's Human Resources Manager Kay Crawford about discrimination of any sort; and Crawford was unaware that any such complaints were made to others. (Crawford Aff. ¶ 14; *see also* Plf. Interrog. Resp. No. 4).

C.    **Smith's Allegations against Webster**

Smith alleges, sometime in July 2008, Night Shift Manager Larry Webster made the following inappropriate comments to her: "You have a big ass"; "You're fine"; and "Are you married?" (Smith Dep. at 83-86). As Smith recalls, Webster made these comments from the doorway of the supervisor's break room, while Smith was using a locker. (*Id.* at 86). Smith did not respond to these comments and ignored them. (*Id.* at 86).

Despite what Smith now contends to be harassing comments, she was comfortable enough to approach Webster in August 2008, wanting to discuss the availability of lead positions. (*Id.* at 87-90). Webster told her to keep bidding for jobs that are posted. (*Id.* at 90). Then, according to Smith, Webster showed her a video on his cell phone depicting Webster masturbating. (*Id.* at 90-91). Smith responded to Webster that she did not want to see the video and that she was a lesbian. (*Id.*). Webster purportedly laughed and commented that he always wanted to be with a lesbian. (*Id.*). Smith left the room. (*Id.*). According to Smith, there were

---

[2] In her deposition, Plaintiff believed that Brian Hanna's name was "Larry." Smith Dep. at 43-44. She has since corrected her deposition to amend all references to the other "Larry" as Mr. Hanna. (Ex. L).

no further incidents with Larry Webster.[3]

Koch Foods did not learn about Smith's allegations concerning Webster until her EEOC Charge. (Crawford Aff. ¶ 15). Nevertheless, Smith claims she complained about Webster's behavior to Hodges, Webster, Hanna, and her union steward. (Smith Dep. at 104; *see also* Plf. Interrog. Resp. No. 4). There is no dispute that Smith never complained to Crawford about any alleged harassment, and Crawford was unaware of any such complaints. (*Id.*; Crawford Aff. ¶ 15; *see also* Plf. Interrog. Resp. No. 4).

**D.      Smith's Assignment in "Coldest" Section of the Plant**

According to Smith, there is an area in the plant, directly under the air conditioner, that is the "coldest" area of the plant. (Smith Dep. at 51-52). Smith contends that sometime after she complained to Webster about his inappropriate behavior, her Supervisor (who she believes was Julio Rodriguez) assigned her to perform work in this location of the plant. (*Id.* at 51-52, 79, 101). But Smith admits that work in this section of the plant fits within her job duties and that she is not prohibited from wearing warmer clothes when working in this area. (*Id.* at 112). Nevertheless, she contends that the assignment was given to her in retaliation for complaining to Webster and others about his inappropriate behavior. (Smith Dep. at 109).

**E.      Smith's Altercation with a Fellow Line Worker and Resulting Termination**

On September 9, 2008, Smith was involved in a verbal altercation with Kelly Fairchild, another line worker. (Smith Dep. at 113). Smith admits telling Fairchild to "shut the hell up" and warning her that she did not want to "mess with [her]." (*Id.* at 118, 127-28). Fairchild reported to Supervisor Cedric Brooks that Smith used abusive language and threatened her. (Crawford Aff. ¶ 16). Brooks, in turn, reported the incident to Crawford the next day. (*Id.*). On

---

[3] At her deposition, Smith estimated that Webster made comments of this nature to her on three to four occasions; but when pressed for specific facts, she only identified these two incidents, and confirmed that Webster's alleged behavior ceased after this second incident. (*Id.* at 83-91, 151).

September 10, 2010, Smith met with Crawford, Hodges, and her union steward. (*Id.* ¶ 17; Smith Dep. at 120-21). At that meeting, Crawford informed Smith of Fairchild's allegations against her and provided Smith with a written Employee Performance Notice indicating that she was being suspended without pay pending further investigation of the incident. (Smith Dep. at 121, 134; *see also* Ex. K). Crawford conducted an investigation and interviewed several witnesses, including Fairchild. (Crawford ¶ 18). Smith was given an opportunity to share her side the story, and provide a written statement. (*Id.*; Smith Dep at 120-21, 126-27). She did admit to using abusive language, but denied making threats. (Smith Dep. at 120-21, 134). Three days later, Crawford informed Smith by phone that she was being terminated for the reasons stated in her Employee Performance Notice. (*Id.*; Crawford Aff. ¶ 19; *see also* Ex. K).

Crawford terminated Smith based on her investigation and conclusion that the allegations made by Fairchild were credible. (Crawford Aff. ¶ 20). Crawford made the decision to terminate Smith without knowledge or consideration or any complaints of discrimination or purported harassment. (*Id.* ¶ 21)

Smith contends that her termination was in retaliation for complaining about discrimination and harassment in the workplace. (Smith Dep. at 109-10). She reached this conclusion based on a comment by another female employee (who's name she cannot remember) that Brooks told the female employee that the Company was planning to fire Smith because Smith complained too much. (*Id.* at 110).

## ARGUMENT

Summary judgment shall be rendered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

7

matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1987). Summary judgment is properly regarded, not as a disfavored procedural shortcut, but rather as "an integral part of the Federal Rules." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). On a motion for summary judgment, "the moving party need only point to the absence of evidence to support the non-moving party's claim." *Cather v. Catheter Technology Corp.*, 753 F. Supp. 634, 638 (S. D. Miss. 1991). To survive the motion, the nonmoving party "must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (emphasis added). Conclusory allegations and unsubstantiated assertions are not sufficient. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

As set forth below, summary judgment is appropriate for Smith's discrimination, harassment and retaliation claims.

### A.  Smith Cannot Prove that She was Denied Promotions Because of Her Race or National Origin

Smith's claim that she was discriminated on the basis of race and national origin rests entirely on her allegations that Koch Foods denied her promotions for lead or tally positions because she was not Hispanic or Mexican (or Guatemalan-American). (Smith Dep. at 56, 70-74). To prevail on a Title VII employment discrimination claim, the plaintiff must offer direct or indirect evidence of discrimination. *Woods v. Sheldon Indep. Sch. Dist.*, 232 Fed. Appx. 385, 387 (5th Cir. 2007). Smith does not point to any direct evidence of discrimination, such as epithets or derogatory statements, to support her claims. Accordingly, she must rely on the indirect, burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Smith must create a presumption of discrimination by making out a prima facie case showing that she was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated

differently from others similarly situated. *Abarca v. Metro Tranasit Auth.*, 404 F. 3d 938, 941 (5th Cir. 2005). If the plaintiff establishes her prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Id*. If the employer meets this burden, the plaintiff must then demonstrate that the proffered reason was mere pretext for discrimination. *Id.*

In this case, Smith cannot satisfy the fourth prong of the *McDonnell Douglas* prima facie test. To be "similarly situated," the plaintiff and the alleged comparator must have comparable job titles, job duties, responsibilities, qualifications and experience. *Stover v. Hattiesburg Sch. Dist.*, 2007 WL 465664, at *9 (S. D. Miss. 2007); *Aucoin v. Kennedy*, 2006 WL 2700711, at *5-6 (E. D. La. Sept. 19, 2006); *Caesar v. Lamar Univ.*, 147 F. Supp. 2d 547, 553 (E. D. Tex. 2001). Smith contends there were four instances in which Hispanic or Latin American employees were selected for promotion over her because of their race and national origin. However, she simply cannot show that any of the three individuals selected for these positions are similarly situated comparators.

Smith unsuccessfully bid for two lead positions in 2008. The undisputed evidence demonstrates that the successful bidders had substantially more experience and qualifications than Smith. The first position, for the Wing Department, was awarded to Araceli Castillo who had ten years more seniority than Smith and no occurrences and warnings; whereas Smith had four occurrences for absences in the previous three months and one written warning. (Crawford Aff. ¶ 10; *see also* Ex. F). The second position, in the Tender Line Department, was awarded to Gloria Hernandez, who had seven years more seniority than Smith, and only one occurrence; whereas, Smith had a total of seven and a half occurrences for absences pending and a written warning. (Crawford Aff. ¶ 11; *see also* Ex. G). Given the gross disparity between Smith's

credentials, as compared to Castillo's and Hernandez's, Smith cannot reasonably contend that she was similarly situated to them.

The other two alleged instances of discrimination are completely unsupported by any credible evidence. According to Smith, she bid for another lead position, which was awarded to Julio "Daniel" Rodriguez over her. Yet Koch Foods is unaware of any such job posting, and there is absolutely no record of any job posting fitting Smith's vague description. More importantly, Smith cannot provide any competent evidence that she is more senior or had fewer job performance issues than Rodriguez. The same is true for Smith's allegation that she was denied a tally position. Indeed, Smith offers absolutely no evidence regarding the details of this alleged application and knows nothing about the person who purportedly received the position – including that person's name. Without more, Smith cannot proceed on discrimination claims that are based entirely on speculation (or perhaps more accurately, fabrication).

Smith's race and national origin discrimination claims also fail because Koch Foods had legitimate, non-discriminatory reasons for awarding the lead positions to Castillo and Hernandez. Koch Foods is bound by the CBA to factor seniority, absenteeism, dexterity, job performance and work record when selecting employees for open job postings. Ex. D. Koch Foods' selection of Castillo and Hernandez – who had far more seniority and far less performance issues than Smith – is entirely consistent with these contract requirements. *See id.* Smith's uncorroborated assertions that she was promised a lead position is immaterial; Koch Foods' management was not at liberty to make any such promises in contravention of the CBA. *See id.* And in any event, the manager who purportedly made this promise was no longer employed by the company at the time Smith bid on these positions. (Crawford Aff. ¶ 12).

In light of the above, the Court should grant Koch Foods summary judgment on Smith's

503995.1

race and national origin discrimination claims.

**B.     Count I Must Be Dismissed Because Plaintiff Cannot Establish that She Suffered Harassment in Violation of Title VII**

Smith's gender discrimination and sexual harassment claim are one and the same; they are based solely on the alleged statements and actions of Koch Foods' Night Shift Manager, Larry Webster. (Smith Dep. at 82). To prevail on a Title VII sexual harassment claim, the plaintiff must demonstrate that she endured a hostile work environment or suffered a tangible employment action as a result of harassment. *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998). Here, Smith cannot establish either form of harassment.

   **1.     Smith cannot establish a hostile work environment**

To establish a "hostile work environment" under Title VII, a plaintiff must show that the harasser's conduct affected a term condition, or privilege of her employment. *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). This requires proof that the alleged sexual harassment was "sufficiently severe as to alter the conditions of employment and create an abusive work environment." *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 330 (5th Cir. 2009). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Stewart*, 586 F.3d at 330 (citation omitted). The conduct must be both "objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Id.* The mere fact that an offensive comment was made, absent more, is not enough to sustain a claim of harassment. *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269-71 (5th Cir. 1998) ("We have never held that workplace harassment, even harassment

between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.") (citations omitted).

Not all inappropriate conduct rises to the level of a federal civil rights violation. The Supreme Court has stated that the "standards for judging hostility are sufficiently demanding to ensure that that Title VII does not become a 'general civility code." *Faragher*, 524 U.S. at 788. Courts must therefore "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes and occasional teasing." *Id.*; *see also Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996) ("Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace."). Applying this standard, the Fifth Circuit has repeatedly dismissed claims of sexual harassment even where there were allegations of multiple sexual comments and physical touching over a prolonged period of time. *See, e.g., Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871 (5th Cir. 1999) (finding male employee's conduct towards female co-worker "boorish and offensive," but not "severe," which included incidents of unwanted touching on employee's arm, attempting to look down employee's clothing and making offensive remarks, for over a year); *Butler*, 161 F.3d at 269 (finding no hostile work environment where school principal made prank phone calls and sent several anonymous letters to two teachers encouraging a romantic relationship and enclosing sexually-graphic greeting cards and a cartoon entitled "bitch woman").

Smith's allegations against Webster, if true, though perhaps considered boorish, are not objectively hostile. Here, Smith relies on two incidents in support of her sexual harassment

503995.1

claim. During the first incident, she claims Webster commented on her appearance ("You have a big ass," "You're fine") and asked if she was married. (Smith Dep. at 83-86). Simply put, these comments fall far below the recognized standard of a hostile work environment and are plainly within the realm of gender-related jokes and occasional teasing that Title VII was not intended to ameliorate. *Faragher*, 524 U.S. at 788. Similarly, the second alleged incident does not, by itself, establish an objectively hostile environment. No doubt, a reasonable employee would be disgusted by a supervisor showing a video of himself masturbating in the workplace. But courts have repeatedly held that showing sexually explicit images in the workplace are not enough to implicate a Title VII violation. *Butler*, 161 F.3d at 269. "A plaintiff . . . must show that implicit or explicit in the sexual content is the message that the plaintiff is incompetent because of her sex." *Id.* Smith does not, and cannot, contend that Larry Webster showed her a video of himself to inhibit her ability to succeed in the workplace or attain promotions. Likewise, Webster's alleged comment that he always wanted to be with a lesbian could be considered boorish, but did not contribute to a hostile work environment.

Equally important, Smith's testimony reveals that she did not find Webster's actions to be subjectively hostile. In both instances, Smith admittedly ignored Webster's behavior. (Smith Dep. at 86, 90-91). And after the second incident, Smith acknowledged Webster's behavior ceased and that she had no more communications with him. (*Id.* at 90-91). Moreover, there is no allegation – much less evidence – that Webster ever inappropriately touched her, threatened or humiliated her or interfered with her work performance. In fact, Smith herself described her working relationship with Webster as "cordial." (Smith Dep. at 108). Indeed, it appears that Smith's lack of interest in Webster's behavior served its intended purpose – the behavior stopped.

503995.1

Even giving Smith the benefit of all inferences she is entitled to at this stage, her allegations at best demonstrate that Webster used incredibly poor judgment by making off-color remarks on two isolated occasions and, on one of those occasions, showing an explicit video to her. But even if true, Webster's comments and actions fall far short of the severe and pervasive requirements necessary to establish a hostile work environment under Title VII.

  **2. Smith cannot establish quid pro quo harassment.**

In order to establish "quid pro quo" harassment, a plaintiff must demonstrate that she suffered a "tangible employment action" as a result of the harasser's conduct. *Casiano*, 213 F.3d at 283. A tangible employment action requires "an official act of the enterprise, *i.e.,* a company act, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.*; *Ellerth,* 524 U.S. at 761-762. Smith claims she suffered an adverse employment action – her termination – in retaliation for complaining about harassment. She does not contend that she was fired *because* she refused Webster's advances. Therefore, a "quid pro quo" claim does not exist. *See Casiano*, 213 F.3d at 283-84; *Chandler v. MDOC,* 2008 WL 2986956 (S.D. Miss. Jul. 30, 2008) (citation omitted) ("As opposed to retaliation, which occurs in response to a protected activity (such as filing a grievance), 'a tangible employment action is the result of the harassment itself.'").

**C. Smith Cannot Demonstrate a Causal Connection Between Her Complaints and Her Termination**

To establish a prima facie case of retaliation a plaintiff must show: (1) she engaged in an activity protected by Title VII; (2) an adverse employment action was taken against her; and (3) there is a causal connection between the two events. *Aryain v. Wal-Mart Stores,* 534 F.3d 473, 484 (5th Cir. 2008). Summary judgment is appropriate if the plaintiff cannot support all three elements. *Hunt v. Rapides Healthcare Sys. LLC,* 277 F.3d 757, 769 (5th Cir. 2001). Here, Smith

14

alleged that she was placed in the "coldest area of the plant" and terminated in retaliation for complaining about discrimination and harassment.  The standard for an adverse action in retaliation claims is whether the adverse action "might have dissuaded a reasonable worker from making a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Johnson v. TCB Constr. Co.*, 334 Fed.Appx. 666, 671 (5th Cir. 2009).  However, even under this more lenient standard, Smith has not offered enough evidence to show that her placement in the "coldest area of the plant" was adverse.

In her deposition Smith readily conceded that performing work under the air conditioner was within her job responsibilities.  (Smith Dep. at 112).  She also admitted that she was permitted to wear warmer clothes if she felt cold.  (*Id.*).  Even if Smith felt this assignment was undesirable, she cannot plausibly contend in light of these admissions that it was an adverse employment action.

But regardless of her admissions referenced above, Smith's retaliation claim ultimately must fail because she cannot show that she was terminated "but for" her participation in a protected activity.  *See Scrivner v. Socorro Indep. Sch. Dist.,* 169 F.3d 969, 972 (5th Cir. 1999).  Here, Smith alleges that she made complaints to Plant Manager Steve Hodges, Night Shift Manager Larry Webster, former Plant Manager Brian Hanna, and her union steward.  (Smith Dep. at 50, 104-05; Ex. J, Plf. Interrog. Resp. No. 4).  Yet, she never complained to Crawford; and Crawford was unaware that any such complaints were made.  (Crawford Aff. ¶ 14; *see also* Plf. Interrog. Resp. No. 4).  This fact alone is fatal to Smith's retaliation claim.  It is undisputed that Crawford made the decision to terminate Smith's employment based on her investigation and evaluation of Smith's altercation with Fairchild.  And since she had no knowledge of Smith's purported complaints, Crawford's decision cannot be deemed retaliatory.  *See, e.g.,*

*Wiley v. American Elec. Power Serv. Corp.*, 287 Fed.App. 335, 340 (5th Cir. 2008) ("Without knowledge of the complaints, there cannot be a causal connection between the plaintiffs' complaints and subsequent termination."); *Davis v. Moore Wallace, Inc.*, 217 Fed.Appx. 313, 317 (5th Cir. 2007) (dismissing retaliation claim where no evidence "that that the decision-makers at [the company] had any knowledge of this protected activity at the time the decision to terminate [the plaintiff] was made"). The same holds true for Smith's claim that her Supervisor (who she believes to be Julio Rodriguez) assigned her to the coldest area of the plant. There is no evidence that this supervisor knew of Smith's alleged complaints to upper management.

Smith's "proof" of retaliation comes exclusively from inadmissible double hearsay – Smith testified a fellow employee told her that a supervisor commented that Koch Foods was looking to get rid of Smith. (Smith Dep. at 110). This is not enough to satisfy Smith's burden. *See Magiera v. City of Dallas*, 2010 WL 3168211 (5th Cir. 2010), (hearsay evidence is inadmissible for summary judgment purposes under Rule 56). Moreover, the mere fact that her termination occurred after she made complaints, without more, is insufficient to meet her burden. *See Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("[T]emporal proximity alone is insufficient to prove but for causation.").

Further, Koch Foods had a legitimate, nondiscriminatory reason for terminating Plaintiff; namely, her violation of several Company policies including, leaving her line, abusive language, and workplace threats. (*See* Crawford Aff. ¶ 20). Although Smith disagrees with Crawford's conclusions regarding the altercation with Fairchild, she offers no evidence that the decision was pretext for discrimination. The law is clear that an employer is not prohibited from terminating employee just because she previously engaged in a protected activity. *See, e.g., Strong*, 482 F.3d at 808 ("Employers are sometimes forced to remove employees who are performing poorly,

503995.1

engaging in improper work conduct, or severely disrupting the workplace."); *Raggs v. Miss. Power & Llight Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) ("Title VII's protection against discrimination does not permit EEOC complainants to disregard work rules or job requirements."). In the absence of any evidence of discriminatory motive or intent, Crawford was entitled to her business discretion to respond to serious allegations of workplace misconduct. *Dubaz v. Johnson Controls World Servs., Inc.*, 163 F.3d 1357 ("Title VII does not allow a court to sit as a super-personnel department and micromanage a company's business decisions.").

Therefore, Smith's retaliation claims should be dismissed.

**D.     Smith is not entitled to punitive damages**

Smith has alleged claim for punitive damages as Count VI in the Complaint. This is not an independent claim, but rather a demand for punitive damages based on allegations asserted in Counts I through IV. (Compl. at 6.) Because Plaintiff cannot sustain a claim of discrimination, harassment or retaliation, she is not entitled to punitive damages under any federal or state law.

## CONCLUSION

As set forth above, Plaintiff Rushawn Smith cannot meet her burden of proof on her discrimination, harassment and retaliation claims. Since there are no material factual disputes, Koch Foods is entitled to summary judgment on all counts as a matter of law. Koch Foods therefore respectfully requests the Court to grant its Motion for Summary Judgment and dismiss this case in its entirety with prejudice.

503995.1

Respectfully submitted,


By: s/  Abizer Zanzi
       One of the Attorneys for Defendant

Edward N. Druck – *pro hac vice*
Abizer Zanzi – *pro hac vice*
Franczek Radelet P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
(312) 986-0300




s/  Stephen J. Carmody

Stephen J. Carmody, Esq., MSB # 8345
Karen E. Howell, Esq., MSB # 102243
Brunini, Grantham, Grower & Hewes, PLLC
The Pinnacle Building
190 East Capitol Street
P.O. Drawer 119 (39205)
Jackson, MS 39201
(601) 948-3101

September 15, 2010

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** to be served on the attorneys of record listed below by filing the foregoing electronically using the CM/ECF filing system on this 15th day of September, 2010:

>Louis H. Watson, Jr.
>Robert N. Norris
>Louis H. Watson, Jr., P.A.
>520 East Capitol Street
>Jackson, MS 39201

By: _s/         Abizer Zanzi_
One of the Attorneys for Defendant

Edward N. Druck – *pro hac vice*
Abizer Zanzi – *pro hac vice*
Franczek Radelet P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
(312) 986-0300

503995.1